# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

MARK E. GESSNER,

                Plaintiff,              :        Case No. 3:10-cv-223

                                                District Judge Thomas M. Rose
      -vs-                                 Magistrate Judge Michael R. Merz

                                    :

SHERIFF PHIL PLUMMER, et al.,

                Defendants.

---

## REPORT AND RECOMMENDATIONS

---

This case is before the Court on Motion for Summary Judgment of Defendants Sheriff Phil Plummer and Deputy Sheriff Doug Olt (Doc. No. 13). Plaintiff filed a Response two days later than the date set by the Court for a response (See Doc. Nos. 17, 19). Because the Plaintiff had only a short time after the Court denied his Motion to Strike to file his response, the Magistrate Judge *sua sponte* extends his time to May 23, 2011. There is no perceptible prejudice to the Defendants from doing so. The Defendants have now filed a Reply (Doc. No. 21) and do not complain of Plaintiff's late filing.

A motion for summary judgment is a dispositive motion on which a magistrate judge to whom such a motion has been referred must file a report and recommendations. 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b).

## SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56.  On a motion for summary judgment, the movant has the burden of showing that there exists no genuine issue of material fact, and the evidence, together with all inferences that can reasonably be drawn therefrom, must be read in the light most favorable to the party opposing the motion. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157-59 (1970).  Nevertheless, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;  the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986) (emphasis in original).  Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

Read together, *Liberty Lobby* and *Celotex* stand for the proposition that a party may move for summary judgment asserting that the opposing party will not be able to produce sufficient evidence at trial to withstand a directed verdict motion (now known as a motion for judgment as a matter of law.  Fed. R. Civ. P. 50).  *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).  If, after sufficient time for discovery, the opposing party is unable to demonstrate that he or she can do so under the *Liberty Lobby* criteria, summary judgment is appropriate.  *Id.*  The opposing party must "do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986).  "If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted." *Liberty Lobby,* 477 U.S. at 249-50 (citations omitted). "The mere possibility of a factual dispute is not enough." *Mitchell v. Toledo Hosp.*, 964 F.2d 577, 582 (6th Cir. 1992)(quoting *Gregg v. Allen-Bradley Co.,* 801 F.2d 859, 863 (6th Cir. 1986). Therefore a court must make a preliminary assessment of the evidence, in order to decide whether the plaintiff's evidence concerns a material issue and is more than *de minimi*. *Hartsel v. Keys*, 87 F.3d 795 (6th Cir. 1996). "On summary judgment," moreover, "the inferences to be drawn from the underlying facts ... must be viewed in the light most favorable to the party opposing the motion." *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962). Thus, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Liberty Lobby,* 477 U.S. at 249.

The moving party

> [A]lways bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex,* 477 U.S. at 323; *see also, Boretti v. Wiscomb,* 930 F.2d 1150, 1156 (6th Cir. 1991) (citation omitted). If the moving party meets this burden, the nonmoving party must go beyond the pleadings to show that there is a genuine issue for trial. *Matsushita*, 475 U.S. at 587; *Martin v. Ohio Turnpike Comm'n.*, 968 F.2d 606, (6th Cir. 1992).

In ruling on a motion for summary judgment (in other words, determining whether there is a genuine issue of material fact), "[a] district court is not ... obligated to wade through and search the entire record for some specific facts that might support the nonmoving party's claim." *Interroyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989). Thus, in determining whether a genuine issue of material fact exists on a particular issue, a court is entitled to rely only upon those portions of the verified pleadings, depositions, answers to interrogatories, and admissions on file, together with any

affidavits submitted, specifically called to its attention by the parties.

# Analysis

Plaintiff brought this action *pro se* to complain of being barred from the Montgomery County Courthouse and the Dayton Municipal Court, a connected building.  He sued both Sheriff Plummer and Deputy Olt in their official and individual capacities (Complaint, Doc. No. 1, ¶ 4).  He asserts that on June 11, 2008, he was "seized, detained, and issued a MCSO Notice of Criminal Trespass" (the "Notice")  which "trespasses" [1] him from those two buildings.  *Id.*  ¶ 6.  Deputy Olt is alleged to have issued the Notice upon "false and fraudulent allegations of harassment against Montgomery County Common Pleas Judge Mary K. Huffman and her court reporter, Amy Burkett.  *Id.*  ¶ 7.  Sheriff Plummer is alleged to have refused to rescind the Notice or "provide Plaintiff a due process hearing to contest the reasons for issuance of the notice and allow Plaintiff to give evidence of his innocence, call witnesses, and cross-examine his accuser[s]."

Plaintiff alleges these actions were taken against him to prevent him from seeking redress in a civil case in which he is the plaintiff, *Gessner v. Schroeder.  Id.*  ¶¶ 9, 12.  He asserts that the Notice violates his First Amendment rights of access to the courthouse as a party to a case and to seek redress of grievances generally and also "for any other usage of said courts building Plaintiff has had since issuance of the notice." *Id.*  ¶ 11.  He also claims Defendants' actions deprive him of due process and equal protection of the laws.  As relief he seeks $40 million compensatory damages

---

[1] Both parties use the phrase "to trespass" as meaning to bar or exclude as in "to make subject to prosecution for trespass if entering thereafter."  While this usage appear to be growing, the Court is unable to find any warrant for it in contemporary dictionaries.  See, e.g., the entry for "trespass, v." in the Oxford English Dictionary.

and punitive damages in an unspecified amount, but does not seek injunctive relief.

Shortly after the case was filed, on August 17, 2010, the Magistrate Judge conducted a scheduling conference and set a schedule for the litigation which included a discovery cut-off of March 15, 2011, and a summary judgment motion deadline of April 15, 2011 (Doc. No. 8). The instant Motion was filed on the deadline and does not reflect that any discovery was conducted by either side in the case.

## Undisputed Facts

The facts set forth in this Report are admitted or established by evidence competent under Fed. R. Civ. P. 56(c)(4) and not controverted by opposing competent evidence.  Defendants supported their Motion with Affidavits of Judge Huffman and Deputy Olt.  Although Plaintiff moved unsuccessfully to strike Judge Huffman's Affidavit, he has not filed any affidavits in support of his opposition.  Instead, he has filed certified copies of documents and certified transcriptions of three conversations between himself and various Common Pleas court or Sheriff's personnel.

Plaintiff Gessner filed a case in the Montgomery County Common Pleas Court against Dayton Police Officer Alan Schroeder; the case was assigned to Common Pleas Judge Mary Katherine Huffman and tried before her and a jury in September, 2007, resulting in a jury verdict in Schroeder's favor.  Plaintiff appealed from that judgment and the appeal received Case No. CA22617 in the Montgomery County Court of Appeals.  The appeal was dismissed on April 7, 2010, and the Ohio Supreme Court later declined jurisdiction over a further appeal on August 11, 2010. Thus appellate proceedings from the Common Pleas judgment were pending until two months after this case was filed.

Both before and after trial, Mr. Gessner, who was proceeding *pro se* in that case as he is in

this one, would appear in Judge Huffman's courtroom without an appointment to seek advice or direction about how to proceed with the case (Affidavit of Mary Katherine Huffman, Ex. A to Motion, PageID 47-48, ¶ 6).[2]  On the occasions when Judge Huffman observed interactions between Mr. Gessner and her staff, she found his behavior threatening and harassing.  *Id.*  On June 11, 2008, Amy Burkett, Judge Huffman's judicial assistant who also is responsible for the recording equipment which makes the official court record, told the Judge about an encounter she had had with Mr. Gessner that morning in the courtroom.  Ms. Burkett told Judge Huffman that Mr. Gessner had "repeatedly suggested that she had somehow altered or failed to maintain the Court's record [of his case]."  *Id.*  ¶ 7.  She said Mr. Gessner had recorded their conversation and she felt both his behavior and demeanor to be threatening.  *Id.*  As a result, Judge Huffman "asked if the Sheriff's Office could trespass Mr. Gessner from the Courthouse..."  *Id.*  ¶ 8.

In his Affidavit, Deputy Olt avers that he was called to Judge Huffman's chambers on June 11, 2008, spoke with Ms. Burkett and Judge Huffman about Mr. Gessner, and received the Judge's request that Mr. Gessner be "trespassed" from the Courthouse.  (Affidavit of Douglas Olt, Ex. B to Motion, PageID 49-50, ¶¶ 4-6).  Judge Huffman also told him that on a prior occasion Mr. Gessner had cornered her in a stairwell.  *Id.*  ¶ 5.  Deputy Olt obtained permission from his supervisor, Sgt. Roy, to "trespass" Mr. Gessner from the Courthouse.  *Id.*  ¶ 6.  Deputy Olt then contacted Mr. Gessner, who was in the Courthouse at the time, served the trespass order on him, and saw him sign the order and leave the building.  *Id.*  ¶ 7.  Olt explained to Gessner "that in the event he had court proceedings to attend, or any other legitimate business in the Courthouse, that he would need to check in with the [Sheriff's] Court Detail and that we would escort him while he conducted his

---

[2].  Mr. Gessner objected to this Affidavit and sought to have it struck from the record (Doc. No. 16).  The Magistrate Judge denied that Motion and found Judge Huffman's Affidavit to be proper under Fed. R. Civ. P. 56 (Decision and Order, Doc. No. 17; Supplemental Decision and Order, Doc. No. 19).  Mr. Gessner has objected to the Magistrate Judge's ruling (Doc. No. 18) and his Objection remains pending for Judge Rose's ruling.

business." *Id.* ¶ 8.

Plaintiff's exhibits comprise

(1) a copy of the Notice,

(2) a copy of a June 26, 2008, letter from Assistant Prosecuting Attorney John A. Cumming communicating the Sheriff's refusal to rescind the Notice,

(3) a transcript (prepared June 12, 2008, by Michelle Elam) of a recording of the conversation between Mr. Gessner and Ms. Burkett on June 11, 2008,

(4) an Entry in *State of Ohio ex rel Mark Gessner v. Dave Vore*, Case No. 2009-0245, signed by Chief Justice Moyer dismissing Plaintiff's appeal from denial of a writ of mandamus in the same case in the Montgomery Court of Appeals,

(5) the Ohio Supreme Court opinion which underlies the dismissal entry,

(6) a transcript (prepared May 10, 2011, by Stacey Mortsolf) of a conversation between Mr. Gessner and an unidentified speaker on July 1, 2008,

(7) a transcript (prepared May 10, 2011, by Stacey Mortsolf) of a conversation between Mr. Gessner and a Mr. Nolan on June 12, 2008, and

(8) a copy of what purports to be a draft Sheriff's report regarding the June 11, 2008, incident.

Based on this state of the facts, Defendants assert they are qualifiedly immune from any liability under 42 U.S.C. § 1983 and immune under Ohio Revised Code Ch. 2744 from Plaintiff's state law claim of intentional infliction of emotional distress.

As to the latter claim, the Court concludes that Plaintiff has not stated or attempted to state an Ohio claim for intentional infliction of emotional distress. The Complaint recites that it arises under 42 U.S.C. § 1983 and that the Court has subject matter jurisdiction under 28 U.S.C. § 1331

(Complaint, Doc. No. 1, ¶¶ 2, 3).  Plaintiff pleads a "First Cause of Action" under § 1983 but does not purport to state any other claim for relief or make any reference to state law.  Finally, in his Response, Plaintiff makes no reference to a state law claim.  Therefore, even considering the liberality to which *pro se* pleadings are entitled, this Complaint does not attempt to state a claim under Ohio law, for intentional infliction of emotional distress or otherwise.

The Complaint does purport to state claims under 42 U.S.C. § 1983.

42 U.S.C. §1983, R.S. §1979, was adopted as part of the Act of April 20, 1871, and reads, as amended:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress , except that in any action brought against a judicial officer, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.  For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia.

The statute creates a cause of action sounding essentially in tort on behalf of any person deprived of a constitutional right by someone acting under color of state law. *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 709 (1999); *Memphis Community School District v. Stachura,* 477 U.S. 299 (1986); *Carey v. Piphus,* 435 U.S. 247 (1978).  The purpose of §1983 is to deter state actors from using the badge of  their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails.  *Wyatt v. Cole*, 504 U.S. 158 (1992).  In order to be granted relief,  a plaintiff must establish that the defendant deprived him of a right secured by the U.S.  Constitution and the laws of the United States and that the deprivation occurred under  color of state law.  *See West v. Atkins,* 487 U.S. 42, 48 (1988); *Parratt v. Taylor*,

451 U.S. 527, 535 (1981); *Flagg Brothers Inc. v. Brooks*, 436 U.S. 149, 155 (1978).

There certainly is no question that whatever action Sheriff Plummer or Deputy Olt took towards the Plaintiff was taken in their capacity as law enforcement officials so that they were acting under color of state law.

Government officials performing discretionary functions are afforded a qualified immunity under 42 U.S.C. §1983 as long as their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800 (1982); *Christophel v. Kukulinsky*, 61 F.3d 479, 484 (6th Cir. 1995); *Adams v. Metiva*, 31 F.3d 375, 386 (6th Cir., 1994); *Flatford v. City of Monroe*, 17 F.3d 162 (6th Cir. 1994).

Defendants claim the benefit of the qualified immunity defense at length in their Motion. In the Complaint purports to sue both Defendants in their official and individual capacities. However, in light of the qualified immunity defense, he abandons any individual capacity claim:

> The issues of Qualified immunity has no application where the constitutional claim is that the deprivation occurred as a result of the policy or practice of a local government entity or as a result of a decision of the chief policymaker. The claim, in essence, is against the local government entity, and not the individual.
>
> What happened to Plaintiff, Mark Gessner was not the random unauthorized act of a low level employee who is sued in his individual capacity and for whom the defense of qualified immunity would be available. Plaintiff, Mark Gessner's was subjected to a decided and consistent policy of Defendant, Sheriff Phil Plummer's Office.

(Response, Doc. No. 20, PageID 133.) Based on Plaintiff's concession, the Defendants are entitled to qualified immunity and the claims against them in their individual capacities should be dismissed with prejudice.

Defendants also claim entitlement to dismissal in their official capacities because they argue that Plaintiff has not demonstrated "that an unconstitutional policy caused his alleged injuries ..." (Motion, Doc. No. 13, PageID 44). Defendants recognize that suit against them in their official

capacities is in effect a suit against "the entity" itself, in this case the Montgomery County Sheriff. *Id.* Defendants in their official capacity are not entitled to qualified immunity. *Owen v. City of Independence, Missouri*, 445 U.S. 622 (1980).

While Plaintiff has not produced any official policy statement of the Sheriff on barring people from the Courthouse, he has produced sufficient evidence from which a reasonable jury could infer the existence of a policy.

Municipalities and other bodies of local government are "persons" within the meaning of §1983 and may therefore be sued directly if they are alleged to have caused a constitutional tort through a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers. *Powers v.Hamilton County Pub. Defender Comm'n*, 501 F.3d 592, 606-07 (6th Cir. 2007); *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690 (1978).

An unconstitutional governmental policy can be inferred from a single decision by the highest officials responsible for setting policy in a particular area of the government's business. *Owen v. City of Independence,* 445 U.S. 622 (1980); *Pembaur v. City of Cincinnati,* 475 U.S. 469 (1986).  On the other hand, official policy cannot be inferred from the single unauthorized act of a subordinate government agent, e.g., an unauthorized shooting by a police officer. *Oklahoma City v. Tuttle*, 471 U.S. 808 (1985); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 311 (6th Cir. 2005)("By itself, 'the wrongful conduct of a single officer without any policy-making authority did not establish municipal policy.'" *quoting Collins v. City of Harker Heights,* 503 U.S. 115, 121 (1992).

Identification of the official whose decisions represent the official policy of a particular local governmental unit is a question of law to be decided by the judge.  *McMillian v. Monroe County, Ala.,* 520 U.S. 781, 784-85 (1997), *citing Jett v. Dallas Ind. School Dist*., 491 U.S. 701, 737 (1989).

In this case there is sufficient evidence to infer the existence of a policy made by the Sheriff[3] and a decision to apply that policy to Plaintiff, also made on authority delegated by the Sheriff. First of all, it appears Judge Huffman treated the Sheriff as the official with authority to decide if Plaintiff should be barred. The evidence is that Judge Huffman did not issue an order to bar Plaintiff, but rather requested that he be barred. Deputy Olt did not act on his own or even on Judge Huffman's request. Rather, he received authorization from his supervisor, Sergeant Roy. Since the Sergeant is unlikely to have acted on his own authority in barring a litigant/member of the public from the Courthouse, it is likely he was acting on delegated authority from the Sheriff. Add to this the fact that the Notice appears to be an official form of the Montgomery County Sheriff [4], pre-printed with blanks for use on different occasions. The form purports to be delivered by Deputy Olt "as agent for various property owners." Taken together and construed most favorably to the Plaintiff, these facts support an inference that the Sheriff has a policy of excluding persons from the Courthouse on request of a judge, at least if the judge's concern is facially about security or even interference with court functions.

To recover, a § 1983 plaintiff must identify the policy, connect the policy to the political subdivision itself, and show that the particular injury was incurred because of the execution of that policy. *Board of County Comm'r of Bryan County, Okl., v. Brown,* 520 U.S. 397, 405 (1997); *Garner v. Memphis Police Dept.*, 8 F.3d 358, 364 (6th Cir. 1993). There must be a direct causal link between the policy and the alleged constitutional violation such that the governmental entity's deliberate conduct can be deemed the moving force behind the constitutional violation. *Graham v. County of Washtenaw*, 358 F.3d 377 (6th Cir. 2004), *citing Waters v. City of Morristown*, 242 F.3d

---

[3] Dave Vore was the Sheriff when the Notice was issued. Shortly thereafter he was succeeded by Phil Plummer, the current incumbent of the office.

[4] Note the revision date of June 20, 2003, in the lower right-hand corner.

353, 362 (6th Cir. 2001)(citing *Board of County Comm'r of Bryan County, Okl., v. Brown,* 520 U.S. 397, 404 (1997)).  There is no doubt that Plaintiff is being excluded from the Courthouse or admitted with restrictions pursuant to the policy identified above.

The critical questions on the instant Motion is whether the Sheriff's policy as applied to Mr. Gessner violates any of his constitutional rights and if those rights were clearly established when the Notice was issued.

As the Court understands Plaintiff's position, it is that the order barring him from the Courthouse except when escorted violates his First Amendment rights to enter the Courthouse, both as a party litigant and as a member of the general public.  He identifies this as a right of access to the courts or to petition for redress of grievances; he may also be asserting a right to enter the Courthouse for other purposes which he does not identify.  He also asserts denial of due process in the failure of the Sheriff to provide him with a post-deprivation hearing before refusing to rescind the order.  He claims a violation of his right to equal protection of the laws.  Finally, at several places in his response, he asserts he has not been afforded the right to confront his accusers.  These four claimed rights will be examined separately.


## Right of Confrontation


The Sixth Amendment to the United States Constitution provides in pertinent part "In all criminal prosecutions, the accused shall enjoy the right to ... be confronted with the witnesses against him ..."  Mr. Gessner has not been charged by Judge Huffman, Ms. Burkett, Sheriff Vore, Sheriff Plummer, or Deputy Olt with any criminal offense as a result of his interaction with Ms. Burkett on June 11, 2008, or any other interaction with Judge Huffman or her staff out of which the Notice arose.  While the facts asserted in the police report which was made as a result of Ms.

Burkett's complaint could potentially have been turned into a criminal complaint for menacing[5], that did not happen and the statute of limitations for filing such a complaint has long since passed. There is no right of confrontation until one formally becomes an accused with the filing of criminal charges. The right of confrontation is simply inapplicable to this case.

## Equal Protection

The Equal Protection Clause of the Fourteenth Amendment commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend. XIV, § 1. The Supreme Court has stated that this language "embodies the general rule that States must treat like cases alike but may treat unlike cases accordingly." *Vacco v. Quill*, 521 U.S. 793, 799 (1997). The states cannot make distinctions which either burden a fundamental right, target a suspect class, or intentionally treat one differently from others similarly situated without any rational basis for the difference. *Id.; Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000) (per curiam); *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 312 (6th Cir. 2005).

Plaintiff has alleged very generally a violation of the Equal Protection Clause. He has not suggested that there is any class of people similarly situated to him which has not been subject to similar treatment by the Montgomery County Sheriff. A mere conclusory allegation is insufficient to state a claim for violation of the Equal Protection Clause. *Car-Two, Inc. v. Dayton*, 357 F.2d 921 (6th Cir. 1966). This claim should be dismissed without prejudice for failure to plead a claim under § 1983 on which relief can be granted.

---

[5] The Magistrate Judge is not concluding that Plaintiff actually committed any act which would qualify as menacing under Ohio law, but merely that if there were going to be any criminal prosecution based on those facts, menacing is the charge a prosecutor most likely would have chosen.

**First Amendment Right of Access**

Most importantly, Plaintiff claims his right of access to the courts for redress of grievances has been violated.

Without question Mr. Gessner's ability to enter the Montgomery County Courthouse[6] and move about freely inside it is more restricted as a result of the Notice than it was before. As a matter of context, however, entry to the Courthouse is much more restricted than it used to be. Persons seeking to enter the building are screened through a magnetometer and their possessions are x-rayed. Both of those processes are conducted by uniformed deputy sheriffs.[7] These processes have become common at court facilities across the United States, particularly since the bombing of the Murrah Federal Building in Oklahoma City in 1995. For example, the same processes are used to screen persons entering the Federal Building in which this Court sits, the Potter Stewart Courthouse where the Sixth Circuit sits, and the Thurgood Marshall Building which houses the Administrative Office of the United States Courts. The general public does not enjoy the same unrestricted entry into courthouses which was common before 1995.

Calm and orderly courthouses are essential to the administration of justice. Entirely apart from any threats of physical violence, courts must have relative order to do justice. For this reason, American judges have always had the power to punish with contempt sanctions those who disrupt court proceedings. *See* Ohio Revised Code § 2705.01: "A court, or judge at chambers, may

---

[6] Reference is made only to the Montgomery County Courthouse but the Notice applies to both that building and the Dayton Municipal Court which is connected by passageway generally open to the public once they have cleared the security at the entrance. Conversely, the Montgomery County Courthouse is open by the same passageway to those who have cleared security at the entrance to the Dayton Municipal Court.

[7] These aspects of entry into the Courthouse are subject to judicial notice because they are open and notorious in the Dayton legal community. They are added to provide context.

summarily punish a person guilty of misbehavior in the presence of or so near the court or judge as to obstruct the administration of justice." 18 U.S.C. § 401(1) is virtually identical. The Supreme Court has upheld the authority of the States to prohibit by criminal sanctions demonstrations so near courthouses as to disrupt the proceedings, even though the demonstration is not on court property. *Cox v. Louisiana*, 379 U.S. 559 (1965).

If courts may screen visitors for weapons and sanction disruptive conduct, why may they not require visitors or litigants who are perceived to be threatening to be accompanied by a court security officer?

Without question, the First Amendment protects a litigant's right of access to the courts. *Bounds v. Smith,* 430 U.S. 817 (1977). However, the First Amendment does not protect a particular method of access. Prisoners, for example, may not dictate the method by which access to the courts will be assured. *Penland v. Warren County Jail*, 759 F.2d 524, 531 n.7 (6th Cir. 1985)(en banc). So far as this Court is aware, neither the Supreme Court nor the Sixth Circuit has ever held that the right of access to the courts encompasses a right to physically enter a courthouse, so long as other adequate means of access are available. Plaintiff does not cite a single instance in which he has been prevented from actually filing in person any document he desired to file in any of his cases in the Courthouse.[8]

Mr. Gessner complains that he was threatened with being jailed "for not more fully detailing his need for a notary public in room 103 of the courts building." (Response, Doc. No. 20, PageID 131.) A fair reading of the transcript of that encounter shows Mr. Gessner being combative with his interlocutor, Deputy Sheriff Grove, and that Mr. Gessner made as many or more threats than the deputy did. Of course, there is no need to enter a courthouse to obtain notarization of an affidavit.

---

[8] The building in question houses the Common Pleas Court, the Court of Appeals, and the Clerk's Office which serves both of those courts.

Mr. Gessner complains that he is humiliated by being escorted to the men's bathroom, but there is no need for anyone to use a public bathroom in a courthouse; it is not a necessary ancillary service to providing access to the courts.

Mr. Gessner argues that individuals such as himself have a presumptive right of access to court proceedings and in this he is correct.  See *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555 (1980);  *Press-Enterprise Co. v. Superior Court*, 464 U.S. 501 (1984)(*Press-Enterprise I*); *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1(1986)(*Press-Enterprise II); Globe Newspaper Co. v. Superior Court*, 457 U.S. 596 (1982).  But Mr. Gessner offers no proof – indeed, not even an allegation – that he has ever been barred from any court proceeding, in his own or any other case. The right to be present is not the same as a right to be there unaccompanied.

Mr. Gessner relies on *Huminski v. Corsones*, 396 F.3d 53 (2nd Cir. 2004), but the facts in that case are far different from this one.  There was an attempt to bar Mr. Huminski from parking his vehicle on or near court property and also an attempt to prevent him from negative speech regarding a particular judge.  The Notice does not address itself in any way to speech by Mr. Gessner and it does not purport to prevent him from entering the Courthouse, but merely requires that he be accompanied.  It is therefore much more narrowly tailored to the precise problem perceived by Judge Huffman – Mr. Gessner's intimidating manner and his unannounced appearance for *ex parte* communications with court staff.

As a more formal matter, *Huminski* does not clearly establish a constitutional right to enter a state courthouse unaccompanied by security personnel even in the Second Circuit where it was decided, much less in the Sixth Circuit, whose precedent controls here.  Ordinarily, "clearly established law" means binding precedent of United States Supreme Court, the Sixth Circuit Court of Appeals,  the Ohio Supreme Court, or the deciding court itself.  *Bush v. Rauch,* 38 F.3d 842, 847 (6th Cir. 1994); *Wegener v. Covington,*   933 F.2d 390  (6th Cir. 1991); *Garvie v. Jackson*, 845 F.2d

647, 649 (6th Cir. 1988); *Davis v. Holly*, 835 F.2d 1175, 1180 (6th Cir. 1987); *Robinson v. Bibb*, 840 F.2d 349, 352 (6th Cir. 1988); or case law from other circuits which is directly on point. *Barrett v. Harrington,* 130 F.3d 246, 264 (6th Cir. 1997)(*citing Cameron v. Seitz*, 38 F.3d 264, 272-73 (6th Cir. 1994). For other decisions to satisfy the test, they must "point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." *Ohio Civil Service Employees Ass'n. v. Seiter*, 858 F.2d 1171 (6th Cir. 1988). Although the absence of a case on point does not necessarily endow a public official with immunity, "when this court can uncover only some generally applicable principle, its specific application to the relevant controversy must again have been 'clearly foreshadowed by applicable direct authority.'" *Blake v. Wright,* 179 F.3d 1003 (6th Cir. 1999)(*quoting Summar v. Bennett*, 157 F.3d 1054, 1058 (6th Cir. 1998).

In sum, Plaintiff does not have a clearly established constitutional right under the First Amendment to unaccompanied access to the Courthouse. His First Amendment claim should be dismissed with prejudice.

**Fourteenth Amendment Right to Procedural Due Process**

Mr. Gessner also asserts that Defendants' actions deprived him of his right to procedural due process under the Fourteenth Amendment. As the Court construes the claim, it is both for lack of a hearing before his right of access to the Courthouse was constricted and also lack of a post-deprivation hearing at which he could contest the evidence allegedly justifying those restrictions.

The Fourteenth Amendment prohibits the States from depriving persons of life, liberty, or property without due process. The Amendment does not itself create the liberty interests it protects,

but state law may create protectible liberty interests.  *Kentucky Dept. of Corrections v. Thompson*, 490 U.S. 454 (1989). To create such a liberty interest, the State must use "'explicitly mandatory language,' i.e., specific directives to the decisionmaker that if the regulations' substantive predicates are present, a particular outcome must follow, in order to create a liberty interest."  *Kentucky Dept. of Corrections, supra, citing Hewitt v. Helms*, 459 U.S. 460, at 471-72 (1983).

Mr. Gessner points to no state law which creates the liberty interest he claims, to wit, the right to enter a courthouse and move about inside unaccompanied by security personnel.  Ohio Revised Code § 311.07(A) provides in pertinent part that the "sheriff shall have charge of the court house," which suggests at least *prima facie* that the Sheriff is the proper authority to control entry into and movement about the Courthouse.  In the absence of state law creating the liberty interest he claims, Mr. Gessner has no procedural due process right, either pre- or post-deprivation, to a hearing.  It is just not the case that the United States Constitution gives persons within the jurisdiction of the States a right to a hearing at which any act taken by a public official must be justified by that public official.

Mr. Gessner notes that the Ohio Court of Appeals and Ohio Supreme Court both declined to issue a writ of mandamus at his request, holding that he had an adequate remedy at law by filing an action under 42 U.S.C. § 1983, either in state or federal court.  That ruling, of course, does not mean that he has a right to the remedy he seeks, but merely the right to have this Court or the Common Pleas Court decide whether he has the constitutional rights he claims.

Mr. Gessner has no procedural due process rights with respect to the issuance, maintenance in place, or rescission of the Notice.  His Fourteenth Amendment claim should also be dismissed with prejudice.

## Conclusion

In accordance with the foregoing analysis, Defendants' Motion for Summary Judgment should be granted and the Complaint herein dismissed with prejudice.

June 1, 2011.

s/ **Michael R. Merz**
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(e), this period is automatically extended to seventeen days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen days after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See United States v. Walters*, 638 F. 2d 947 (6th Cir., 1981); *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed. 2d 435 (1985).